**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| **THE ESTATE OF KYRA WARNER BY KIMBERLY NORTON, PERSONAL REPRESENTATIVE,** | ) | |
| **Plaintiff,** | ) | **NO. 1:19-cv-00774-RLY-MJD** |
| **v.** | ) | |
| **WELLPATH f/k/a CORRECT CARE SOLUTIONS, LLC, MARION COUNTY SHERIFF, KRISTI KAY CARPENTER, PAMELA HANSEN, and, THERESA LYNN WISCHMEYER,** | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OBJECTIONS TO MEDICAL DEFENDANTS' PROPOSED FINAL JURY INSTRUCTIONS**

Plaintiff, by counsel, pursuant to the Case Management Plan, submits the following objections to the Medical Defendants' proposed final jury instructions (Dkt. 190).

**Objection to Proposed Instruction No. 18**

This instruction on the Fourth Amendment impermissibly includes the requirement of a finding of a subjective mens rea element of "reckless disregard" on behalf of the nurses, when such an element is not a requirement of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 397 (1989) ("the subjective motivations of the individual officers …our prior cases make clear has no bearing on whether a particular seizure is "unreasonable" under the Fourth Amendment."); *id.*, at 399 ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in that

inquiry."); *Doxtator v. O'Brien*, 39 F.4th 852, 861 (7th Cir. 2022) ("the reasonableness inquiry under the Fourth Amendment is objective—and therefore subjective intentions and beliefs do not matter").

The Seventh Circuit's Pattern Jury Instruction 7.11, Titled "Fourth Amendment: Medical Care For Arrestee" adheres to this fundamental principle of Fourth Amendment law on objective reasonableness and does not include a subjective factor. Plaintiff's Jury Instruction No. 5 is based upon 7.11 and does not include a subjective element.

The Medical Defendants include a subjective element of "reckless disregard" and cite not only to the Seventh Circuit's Model Instruction No. 7.11, but also to 7.17, which applies to "Eighth and Fourteenth Amendment" medical claims, which are not applicable to this case. *Pittman v. Cty. of Madison,* 970 F.3d 823, 827 (7th Cir. 2020) (reversing jury verdict for defendant for district court's failure to provide objective reasonable jury instruction to medical care claim brought by pretrial detainee); *Florek v. Vill. of Mundelein*, 649 F.3d 594, 598 (7th Cir. 2011) (The Fourth Amendment objective reasonableness standard governs medical care incident to an arrest).

The Medical Defendants cite to the Seventh Circuit's decision in *Miranda v. City of Lake*, 900 F.3d 335 (7th Cir. 2018) as authority. But the Seventh Circuit in *Miranda* adopted the objective reasonableness standard for medical care of pretrial detainees and did not require a subjective element. The Seventh Circuit in *Miranda* did observe that a plaintiff would have to show that a defendants' state of mind was intentional, that is "purposeful, knowing, or reckless disregard" but that was easily shown in that case, as here, where the defendant jail medical providers "deliberately chose a 'wait and see' monitoring plan" of an inmate who was in medical distress (there not eating or drinking), rather than to send the inmate to the hospital. 900 F.3d at 354. The same is true here and admitted by the Defendants. They deliberately chose to move Kyra Warner to an observation

cell rather than send her to the hospital, just as in *Miranda*. Hence their decision was purposeful and knowing. *Miranda* teaches that such purposeful decision-making is sufficient:

> It would be a different matter if, for example, the medical defendants had forgotten that Gomes was in the jail, or mixed up her chart with that of another detainee, or if Dr. Elazegui forgot to take over coverage for Dr. Kim when he went on vacation. Such negligence would be insufficient to support liability under the Fourteenth Amendment, even though it might support state-law liability. Here, there is evidence that Drs. Elazegui and Singh deliberately chose a "wait and see" monitoring plan, knowing that Gomes was neither eating nor drinking nor competent to care for herself. See *Glisson*, 849 F.3d at 380, 382 (recognizing inaction as a choice). Because the Estate does not claim merely negligent conduct, a jury must decide whether the doctors' deliberate failure to act was objectively reasonable.

*Miranda,* 900 F.3d at 354.

Defendants' proposed jury instruction, attempting to engraft a "reckless disregard" element unto the objective reasonableness test under the Fourth Amendment, is contrary to law and should be rejected

This understanding of *Miranda*, that no subjective element of "recklessness" is required towards pretrial detainees alleging inadequate medical care, is how the Seventh Circuit has explained its *Miranda* holding:

> At oral argument, though, the parties all agreed that the standards are now effectively the same for judging the adequacy of custodial medical care under either Amendment. Under the Fourth Amendment, an arrestee must demonstrate that an official's actions were "objectively unreasonable under the circumstances." *Estate of Perry v. Wenzel*, 872 F.3d 439, 453 (7th Cir. 2017). This objective rule is easier for a plaintiff to meet than the subjective deliberate-indifference standard used under the Eighth Amendment. *Id*. For years, we also used the more onerous subjective approach for Fourteenth Amendment claims relating to conditions of pretrial detention. See, e.g., *Pittman ex rel. Hamilton v. Cty. of Madison*, 746 F.3d 766, 775 (7th Cir. 2014). In 2018, however, we clarified that pretrial detainees' medical-care claims are now governed by an "objective unreasonableness inquiry." *Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018). Both standards, then, are objective, and the non-medical defendants identify no practical difference between them.

*Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

Unfortunately, the Seventh Circuit's model instruction on medical care claims by pretrial detainees (7.17 Eighth and Fourteenth Amendments: Failure To Provide Medical Attention – Elements), cited by the Medical Defendant here, has not been updated since 2017, pre-*Miranda*, and hence still uses the "more onerous" subjective element for "Fourteenth Amendment" medical claims by pretrial detainees. See https://www.ca7.uscourts.gov/pattern-jury-instructions/pattern-jury.htm (Pattern Civil Jury Instructions [revised August 2017]).

The Fourth Amendment Instruction No. 5 submitted by the Plaintiff, based upon the Seventh Circuit's Pattern Jury Instruction 7.11, Titled "Fourth Amendment: Medical Care For Arrestee" should be utilized by the Court.

**Objection to Proposed Instruction No. 19**

Defendants' Instruction No. 19 is the familiar "personal involvement" in the constitutional deprivation requirement and tracks the Seventh Circuit's Pattern Instruction No. 7.02. There is no objection to the language of the pattern instruction. However, there are two important clarifications which need to be made, one recognized by the pattern instruction's Committee Comments, and one required by Seventh Circuit precedent applicable to the facts of this case recognizing that inaction, as well as action, can constitute "personal involvement."

First, the Official Comment to Pattern Instruction No. 7.02 notes that providing the instruction "may be misleading" if, as here, there are state law claims which involve respondeat superior liability:

> In some cases, giving this instruction may risk misleading the jury. There are situations in which it does not apply or may be inaccurate, for example, cases involving claims of failure to intervene, supervisory liability, conspiracy, or cases in which there are state law claims on which there is respondeat superior liability.
> If the court gives this instruction and the jury will be considering a "failure to intervene"claim, the court may wish to preface the instruction for that claim

> "However," and give the failure to intervene instruction immediately after this one, or take other steps to avoid jury confusion. See Instruction 7.22. If the case involves a supplemental state law claim involving respondeat superior liability, this instruction should be modified to limit it to the federal claim.

Hence, per the Committee's comment, the Court should modify the instruction to make it clear that it does not apply to the state law claim.

Additionally, and just as importantly, the Court should modify the instruction to make it clear that *inaction,* as well as action, can constitute "personal involvement in the conduct that Plaintiff complains about[.]" *Maltby v. Winston*, 36 F.3d 548 (7th Cir. 1994) (personal responsibility may be shown if an officer "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent"); *Burke v. Town of Walpole*, 2004 U.S. Dist. LEXIS 3964, 2004 WL 507795, at *22 (D. Mass. Jan. 22, 2004) (inaction may satisfy cause-in-fact component of Section 1983 action where inaction was a substantial factor in producing the harm); *Ortiz v. City of Chi.*, No. 09-cv-2636, 2010 U.S. Dist. LEXIS 101100, at *28-30 (N.D. Ill. Sep. 22, 2010) (act or failure to act sufficient for personal involvement).

Thus, this instruction should be modified to include the following two sentences:

This instruction applies only to Plaintiff's federal constitutional claims.

An act or failure to act may constitute sufficient personal involvement in a constitutional violation.

**Objection to Proposed Instruction No. 20**

This instruction on Plaintiff's state law negligence claim frames the defendant nurses' actions or inactions too narrowly. It limits the nurses' potential exposure to "not sending Kyra

Warner to the hospital when they evaluated her in the female holding tank." And, while Plaintiff complains about this failure, she also complains that the nurses informed the correctional officers that Kyra Warner "was faking," that the nurses failed to place Kyra under a medical watch, and that the nurses failed to reevaluate Kyra in a timely manner while she was in the J-4 cell. These four complaints are encompassed within Plaintiff's Proposed Instruction No. 29, which, like Defendants' suggested instruction, tracks the format of Indiana's Model Civil Jury Instruction No. 903 (Elements; Burden of Proof"), but which frames the issue consistent with Plaintiff's theory of the case and will be supported by the evidence. Hence, the first element of this instruction should be modified to read:

1. Defendants Wellpath, Wischmeyer, Hansen and/or Carpenter *acted or failed to act by failing to provide Kyra Warner with necessary medical care for a drug overdose*; and"

Defendants' proposed instruction No. 20 should be rejected, and Plaintiff's proposed Instruction No. 29 should be utilized instead.

**Objection to Proposed Instruction No. 22**

Defendants' proposed instruction is a "responsible cause" instruction, which tracks the Indiana Model Civil Jury Instruction 1513, but leaves out the concluding sentence applicable in this case, that "There can be more than one responsible cause for an injury." The Model Instruction Committee Comments notes that this sentence should be added to the instruction when it is an issue in the case. Because there are multiple actors in this case, each of whose' acts and failures to act caused Kyra not being provided the medical care she needed, this additional sentence should

be added. Additionally, a sentence should be added that this instruction applies only to the state law claims, not to the federal claims. [1]

Plaintiff's proposed instruction No. 22 tracks the model instruction with the additional "more than one responsible cause" sentence suggested by the Committee Comments and should be given instead of this one.

**Objection to Proposed Instruction No. 23**

There are two Indiana Model Civil Jury Instructions on Foreseeable.

Defendants use Indiana Jury Instruction No. 1514 which states "[An injury][A death] is "foreseeable" when a [type of health care provider] should have known that [his][her] act or failure to act might reasonably cause the [injury][death]."

Plaintiff's proposed instruction No. 23 tracks verbatim the language contained in Indiana Model Civil Jury Instruction No. 918 defining "Foreseeable" as: "An injury or death is 'foreseeable' when a person should realize that his or her act or failure to act might cause harm."

---

[1] The Seventh Circuit does not suggest using a proximate cause instruction on federal claims because of the confusion the term creates. As stated in the Comments by the Committee which drafted the instructions: 1.30 PROXIMATE CAUSE, Committee Comments ("The Committee included no general instruction regarding "proximate cause" or "legal cause" because these terms are not uniformly defined. ... There is no consistent causation standard for either federal or state claims... 57A Am. Jur. 2d Negligence § 424 ("It has been said of the law of "proximate cause" that there is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which the opinions are in such a welter of confusion…"). See also *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 701 (2011) ("The term "proximate cause" itself is hardly essential to the imposition of such limits. It is a term notoriously confusing."); *Norfolk S. Ry. v. Sorrell*, 549 U.S. 158, 160 (2007) Ginsburg, J., concurring in judgment) ("nothing in the opinion ought to encourage courts to use "proximate cause," or any term like it, in jury instructions, as such terms could only serve to confuse jurors and distract them from deciding cases on their merits."); *United States v. Hatfield*, 591 F.3d 945, 949 (7th Cir. 2010) ("We particularly don't understand what a jury would make of "primary cause" and "played a part," even though those do not sound like technical legal terms, albeit "primary cause" is listed in Black's law dictionary as a synonym for "proximate cause"--which confuses things further because "proximate cause" usually implies foreseeability."); *Gercey v. United States*, 409 F. Supp. 946, 954 (D.R.I. 1976) ("The notion of proximate cause is a confusing concept in tort law and one often utilized as a means of disguising policy judgments that have no connection with questions of causation at all.").

The Committee Comments to Model 918 explain that: "The determination of what is reasonably foreseeable is not judged by the subjective opinions of those involved, but is based upon the standard of due care in avoiding a result which might reasonably have been anticipated in the ordinary experience of people." *Arnold v. F.J. Hab, Inc.*, 745 N.E.2d 912, 917–18 (Ind. Ct. App. 2001) (citing *Ashcraft v. Northeast Sullivan County Sch. Corp*., 706 N.E.2d 1101, 1105 (Ind. Ct. App. 1999)). When some harm is foreseeable, a person is responsible for any injury *even if the extent of the injury was unforeseeable*. *Bolin v. Wingert*, 764 N.E.2d 201, 207–08 (Ind. 2002) (emphasis supplied). Committee Comments, Indiana Model Civil Jury Instructions 918 (2021).

Plaintiff submits the Model Instruction No. 918 better captures relevant Indiana law on foreseeability in this case. Kyra's death did not have to be seen, just some harm to her had to be foreseeable. Plaintiff's proposed instruction No. 23 should be given instead of Defendants' proposed instruction No. 23.

**Objection to Proposed Instruction No. 24**

This instruction, which would direct the jury to only expert testimony about whether the nurses' actions or inactions met the standard of care, misstates the law and would constitute reversible error if given.

Indiana law holds that in a case like this, where what the medical provider did wrong (here not sending a drug-overdosing individual to the hospital) is within the common understanding of laypersons, expert testimony is not required. Evidence will show that it was common knowledge of both correctional officers and inmates that Kyra Warner needed to go to the hospital for her apparent drug overdose.

Where this common knowledge exception applies, as here, it would be error for a court to

give the jury Indiana Model Civil Jury Instruction 1539, which is the basis for Defendants' Instruction No. 24. The Committee notes to Model Instruction No. 1539 explicitly states this limitation: "This instruction should not be used when the "common knowledge" or "res ipsa loquitur" exception discussed above applies."

The Committee Notes go on to explain that: "A plaintiff need not present expert testimony, however, when deviation from the standard of care is commonly known to laypersons, and when the physician's conduct is so obviously substandard that one need not possess medical expertise to recognize the breach of the standard of care." Indiana Model Civil Jury Instructions 1539 (2021).

One does not need a medical degree to understand that someone who is overdosing from drugs should be sent to the hospital for treatment. That is especially the case here, where the Defendants admit that if they had *any* information that Kyra Warner was overdosing the prudent and reasonable response would have been to send to her to the hospital. This is common sense and hence it is within the common knowledge of laypersons that such "care" is substandard.

While Indiana generally requires expert testimony in order to establish a standard of care in medical negligence cases, Indiana law recognizes that under circumstances like these, where the shortcomings of the medical provider are within common knowledge, expert testimony is not required to establish a standard of care or find negligence:

> However, in some situations, a physician's allegedly negligent act or omission is so obvious that expert testimony is unnecessary. *Wright v. Carter*, 622 N.E.2d 170, 171 (Ind. 1993). Cases not requiring expert testimony are those fitting the "common knowledge" or res ipsa loquitur exception. *Malooley v. McIntyre*, 597 N.E.2d 314, 318-319 (Ind. Ct. App. 1992). Application of this exception is limited to situations in which the physician's conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care. *Id*. at 319.

*Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005); See also *Perry v. Anonymous Physician*, 25 N.E.3d 103, 106 n.2 (Ind. Ct. App. 2014) (quoting *Ziobron v. Squires*, 907 N.E.2d 118, 123

(Ind. Ct. App. 2008) ("In some situations a physician's alleged negligence is so obvious that expert testimony is unnecessary."); *Shirey v. Schlemmer,* 140 Ind.App 606, 223 N.E.2d 759, rev'd on other grounds, 249 Ind. 1, 230 N.E.2d 534 (1967) (expert evidence on the issue of standard of care was not necessary when a doctor refused to alter treatment after six months of therapy without improvement.); *Malooley v. McIntyre*, 597 N.E.2d 314, 318-19 (Ind. Ct. App. 1992) ("Application of this exception is limited to situations in which the physician's conduct is so obviously substandard that one need not possess medical expertise in order to recognize the breach of the applicable standard of care.") ("a useful summation of what we have herein referred to as the 'common knowledge exception': 'However, where negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required.'").

Defendants' Instruction No. 24 should not be given for another reason. This instruction is misleading in that it also suggests that *only* expert testimony is relevant on the issue of the nurses' alleged negligence. This is incorrect and not the law.

It is accurate that in cases where the common knowledge exception does not apply, expert testimony is required to establish the appropriate standard of care. However, this instruction is written so broadly worded that it reads that the entire question of the nurses' negligence is to be determined solely by expert testimony. It suggests that the testimony of other witnesses about what they heard and saw are irrelevant to whether the nurses were negligent. This is clearly not Indiana law. *Malooley v. McIntyre*, 597 N.E.2d 314, 317-18 (Ind. Ct. App. 1992) ("This is not to say that the ultimate issue for resolution, i.e., negligence, rests within the exclusive domain of expert witnesses. It is only to say that before the trier of fact may confront the factual question the issue must be presented and placed in controversy by reference to expert opinion."); *Oaks v.*

*Chamberlain,* 76 N.E.3d 941, 948 (Ind. Ct. App. 2017) (quoting *Walker v. Cuppett*, 808 N.E.2d 85, 95 (Ind. Ct. App. 2004), ("we have held that '[d]octors and other expert witnesses are not oracles whose opinions, once stated, cannot be questioned or refuted by other evidence, even if that evidence does not come in the form of another expert's testimony.'").

As the Indiana Court of Appeals has observed about defendants' proposed instruction:

> "Whether the treatment of any particular injury or case was proper, or whether a surgical operation was skillfully performed, or whether a particular disease resulted from alleged negligent treatment, and like questions of science, most of necessity depend upon the testimony of physicians and surgeons learned in such matters, but such questions are not identical with the ultimate issue to be decided by the jury. (Citations omitted.) The foregoing rule does not have the effect of limiting or prescribing the testimony of nonexpert witnesses as to particular facts within their knowledge, which may bear upon questions depending for their ultimate solution upon scientific knowledge. In a malpractice suit, facts relating to the treatment and the condition of the patient may be stated by such witnesses, though they may be incompetent to give an opinion as to the value or effect of such facts from a medical or surgical point of view." (Citations omitted.).

*Davis v. Schneider*, 182 Ind. App. 275, 281, 395 N.E.2d 283, 288 (1979).

Defendants' proposed instruction No. 24 should be rejected for all of the above reasons.

**Objection to Proposed Instructions Nos. 25, 26, 27, 28, and 29**

The Nurse Defendants proposed Instructions Nos. 25 through 29 are based upon comparative fault and/or contributory negligence principles which do not apply in this case.

These nurses and the other defendants have to take their victim as they find her and cannot claim that Kyra's previous and underlying medical conditions for which they were seeing her, drug addiction and an overdose, are a fault. Defendants obviously intend to argue that Kyra's addiction and pre-treatment drug overdose constituted fault but are legally precluded from doing so in this case. Hence, any instructions on Comparative Fault or Contributory Negligence should not be given with respect to Kyra Warner

The rationale for the doctrine of comparative fault is fundamental fairness. Comparative fault is not intended to excuse medical negligence or to punish sick people, including those who are addicted to or overdosing on drugs.

It appears that the defense wants to misuse the doctrine of comparative fault to attribute fault to Kyra Warner for her underlying medical condition and previous overdose. This they cannot do. Medical personnel have a duty to use reasonable care to treat their patients' conditions. The condition that gives rise to the duty to treat a drug overdose cannot constitute "comparative fault."

A person with a heart attack needs proper medical care. The ER doctor who negligently responds to such a medical emergency does not escape liability by claiming the patient is at fault for being overweight or eating too much steak.

The Indiana Supreme Court, following the Restatement of Torts and the law of other jurisdictions, precludes defendants' contention that Kyra Warner's drug overdose was a fault. As the Court ruled in a medical negligence case:

> The effect of Dr. Cavens's argument is that when a person seeks medical attention for a medical condition after having been negligent in caring for the condition, a doctor who provides subsequent treatment should not be liable for any ensuing injuries or aggravation caused by the doctor's treatment, even if it falls below the applicable standard of care. We disagree.
>
> Permitting medical malpractice defendants to assert the defense of contributory negligence by reason of a patient's negligence prior to the defendant physician's treatment of the patient conflicts with a long-standing common law principle: "It is a staple of tort law that the tort-feasor takes her victim as she finds him. *Bemenderfer v. Williams*, 745 N.E.2d 212, 218 (Ind. 2001). Similarly, in *Dunkelbarger Constr. Co. v. Watts*, 488 N.E.2d 355, 358 (Ind. Ct. App. 1986), the court described as "black letter law" a jury instruction advising that a plaintiff "will be entitled to recover where the negligence of the defendants caused an injury even though by reason of previous physical or diseased condition such injuries are more serious, or the person is more susceptible to injury, or death is directly hastened." See also *Brokers, Inc. v. White*, 513 N.E.2d 200, 203-05 (Ind. Ct. App. 1987); *Johnson v. Bender*, 174 Ind. App. 638, 644-45, 369 N.E.2d 936, 940 (1977), trans. denied. Indeed, this principle is embodied in Section 461 of the Restatement (Second) of Torts (1965):

> The negligent actor is subject to liability for harm to another although a physical condition of the other which is neither known nor should be known to the actor makes the injury greater than that which the actor as a reasonable man should have foreseen as a probable result of his conduct.
>
> It is people who are sick or injured that most often seek medical attention. Many of these infirmities result, at least in part, from the patients' own carelessness (e.g. negligent driving or other activities, failure to regularly exercise, unhealthy diet, smoking, etc.). To permit healthcare providers to assert their patients' pre-treatment negligent conduct to support a contributory negligence defense would absolve such providers from tort responsibility in the event of medical negligence and thus operate to undermine substantially such providers' duty of reasonable care. Numerous other jurisdictions agree that, where a patient seeks medical treatment for a condition that may have arisen in whole or in part from the patient's own negligence, such negligence is not available as a defense to claims alleging medical malpractice in providing subsequent treatment.

*Cavens v. Zaberdac*, 849 N.E.2d 526, 529-30 (Ind. 2006).

In *Cavens* the Supreme Court affirmed the trial court's directed verdict for the plaintiff on the issue of contributory negligence because the patient's conduct of taking a dose of medicine that was not recommended was not simultaneous with defendant's alleged malpractice. *Cavens,* 849 N.E.2d at 528-32. Noting that a tortfeasor takes the victim as he finds her, the Court stated that health care providers cannot argue contributory negligence when a patient seeks treatment for a condition that may have arisen from the patient's own negligence. *Id.*

The Indiana Supreme Court has even ruled that the law of contributory negligence is not applicable in the case of a jail suicide, because the jailers have a duty of care to prevent this very type of harm. *Sanders v. County of Steuben*, 693 N.E.2d 16, 17 (Ind. 1998) ("In a nutshell, we hold that the decedent's act of suicide cannot be the basis for a finding of contributory negligence or incurred risk that would bar a plaintiff's claim for wrongful death of an inmate. To permit the suicide (or attempted suicide) to constitute a bar to recovery would eliminate altogether a claim for breach of a custodian's duty to take reasonable steps to protect an inmate from harm, self-

inflicted or otherwise."); *id*., 693 N.E.2d at 20 ("In sum, we conclude that the act of suicide cannot constitute contributory negligence or incurred risk in a custodial suicide case. Because the jury was instructed on contributory negligence and incurred risk in such a manner as to permit the suicide itself to bar the claims, a new trial is required."). See also *Corbier v. Watson*, No. 16-CV-257-SMY-MAB, 2019 U.S. Dist. LEXIS 14073, at *31 (S.D. Ill. Jan. 29, 2019) (applying Illinois law and denying contributory negligence defense on jail suicide) ("jail officers and officials, owe a duty under Illinois law to protect detainees from 'self-injury or self-destruction' by using 'ordinary and reasonable care for the preservation of their prisoner's health and life under the circumstances of the particular case.') (quoting *Hayes v. City of Des Plaines*, 182 F.R.D. 546, 549 (N.D. Ill. 1998).

The same is true in this case. To allow Kyra Warner's drug addiction and pre-treatment medical condition of an overdose to constitute contributory negligence or fault for comparative fault would eliminate altogether the Estate's claim for breach of her custodian's duty to take reasonable steps to protect her from harm, self-inflicted or otherwise.

It would be reversible error to provide the jury with the Medical Defendants' comparative negligence (and the Sheriff's contributory negligence) instructions. They should be rejected.

Additionally, Defendants' proposed Instruction No. 28, which states that patients must give health care providers accurate and complete information, is based upon Indiana Model Contributory Negligence Instruction No. 1550. The Committee Notes to this instruction explicitly state that it does not apply in comparative fault cases. ("This instruction applies only where the doctor or dentist is a qualified health care provider and is not subject to suit under the Comparative Fault Act."). The Medical Defendants had to have known about this explicit inapplicability of this instruction yet submitted it anyway.

Hence, this instruction should not be given here for this additional reason.

**Objection to Proposed Instruction No. 30**

Defendants' proposed instruction is ostensibly based upon the Seventh Circuit's Model Civil Jury Instruction No. 7.26 on compensatory damages. However, defendants omit entire categories of recoverable damages and simply leave-out much of the language of the model instruction. For example, Defendants omit compensation for the first category of damages available as mentioned in subpart "a." of the model instruction, on damages for physical, mental, and emotional pain and suffering. Defendants also omit from subpart "b" of the model instruction compensation for "The decedent's loss of the capacity to carry on and enjoy her life's activities in a way she would have done had she lived."

Plaintiff's proposed Instruction No. 11 tracks the language in the Seventh Circuit Pattern Civil Jury Instruction No. 7.26 (Damages– Compensatory) (2017 rev.) and should be given instead.

**Objection to Proposed Instruction No. 32**

Defendants' proposed instruction is based upon Indiana Model No. 725 on Wrongful Death Damages but includes additional language about dependency not found in the model instruction and which is an incomplete explanation of the relevant law. Accordingly, the instruction is misleading and confusing and should not be provided to jury.

Specifically, the additional language Defendants add to Model No. 725 states:

> Plaintiff must prove, by a preponderance of the evidence, that Gage Hill and/or Kadyn Miller were "dependent children" of Kyra Warner at the time of her death.
>
> Dependency requires proof of:
> 1. a need or necessity of support on the part of the alleged dependent; and
> 2. the decedent's contribution to such support

Defendants' proposed language fails to advise the jury of a number of relevant factors related to dependency, including that:

- A partial, rather than a total dependency, is sufficient to support recovery under Indiana's wrongful death statute. *Estate of Sullivan v. United States*, 777 F. Supp. 695, 1991 U.S. Dist. LEXIS 16361 (N.D. Ind. 1991).

- Dependency is not measured by monetary contributions alone but may include keeping the family and home in condition and with surroundings suitable to their station in life, through love, affection, and services. *Necessary v. Inter-State Towing*, 697 N.E.2d 73, 1998 Ind. App. LEXIS 1098 (Ind. Ct. App. 1998).

- In determining necessity for support from decedent, you may consider emotional support provided by decedent as well as regular financial contributions made to dependent. *Necessary v. Inter-State Towing*, 697 N.E.2d 73, 1998 Ind. App. LEXIS 1098 (Ind. Ct. App. 1998).

- A person may be partially dependent even though he could survive without the contribution made by the deceased." *Lustick v. Hall*, 403 N.E.2d 1128, 1131–1132 (Ind.Ct.App.1980).

There are undoubtably other pertinent and relevant considerations which could be added. Defendants' proposed instruction departs from the Model Instruction and omits relevant considerations on the topic of dependency that it raises. Accordingly, Defendants' proposed instruction should be rejected.

Respectfully submitted,

Dated: October 6, 2022

*/s/ Richard A. Waples*
Richard A. Waples
Raeanna C. Spahn
Attorneys for Plaintiff

Richard A. Waples
**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, Indiana 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com

Raeanna C. Spahn
**ESKEW LAW**
333 N. Alabama St. Suite 350
Indianapolis, Indiana 46201
TEL: (317) 974-0177
FAX: (317) 974-0179
EMAIL: raeanna@eskewlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 6, 2022, a copy of this document was filed electronically. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system:

Carol A. Dillon at carol@bleekedilloncrandall.com

Christopher Andrew Farrington at drew@bleekedilloncrandall.com

Anthony W. Overholt at aoverholt@fbtlaw.com

Alexander P. Will at awill@fbtlaw.com

*/s/ Richard A. Waples*
Richard A. Waples

Richard A. Waples
**WAPLES & HANGER**
410 N. Audubon Road
Indianapolis, Indiana 46219
TEL: (317) 357-0903
FAX: (317) 357-0275
EMAIL: rwaples@wapleshanger.com

Raeanna C. Spahn
**ESKEW LAW**
333 N. Alabama St. Suite 350
Indianapolis, Indiana 46201
TEL: (317) 974-0177
FAX: (317) 974-0179
EMAIL: raeanna@eskewlaw.com